United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENLINE INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AGRI-PROCESS INNOVATIONS, INC.; and AP FABRICATIONS, LLC, f/k/a/ GREENLINE FABRICATIONS, LLC, <br><br> Defendants. <br><br> _____/ | No. C 08-2438 CW <br><br> ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO STAY OR TO TRANSFER AND THEIR MOTION TO DISMISS FOR LACK OF STANDING AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Defendants Agri-Process Innovations, Inc. and AP Fabrications, LLC (collectively API/APF) move to dismiss or stay this action or, in the alternative, to transfer it to the Eastern District of Arkansas. Plaintiff Greenline Industries, Inc. (GII) opposes the motion. The motion is decided on the papers; the July 24 hearing

is vacated.  Having considered all of the papers filed by the parties, the Court denies without prejudice API/APF's motion to stay or to transfer as well as their motion to dismiss for lack of standing.

## BACKGROUND

Except where noted, the following facts are taken from the complaint and assumed true for purposes of this order.

In 2003, Jacques Sinoncelli and Michael Brown founded Bio-Energy Systems, LLC, to develop and build a biodiesel plant in Vallejo, California based on biodiesel processing technology developed by Sinoncelli.  Sinoncelli's technology is unique because it does not require water in the purification process.  After completion of the plant, Bio-Energy Systems turned to improving and automating its biodiesel processing technology.  By 2005, Bio-Energy had increased the capacity of its Vallejo plant from just over 200,000 gallons per year to over two million gallons per year. Bio-Energy also developed a continuous flow, computerized process previously unavailable for small- and medium-scale biodiesel processors.  At an unspecified later date, Sinoncelli and Brown founded Greenline Industries.[1]

In 2005, Greenline began marketing the bio-diesel processing units designed by Bio-Energy.  In July, 2006 Greenline obtained an

---

[1] As discussed below, the complaint erroneously states that Plaintiff GII took various actions as early as 2005.  However, GII was not incorporated until March 5, 2008.  It appears that, prior to incorporation, GII may have conducted business as Greenline Industries, LLC (GIL).  Because it is not clear what entity took the actions alleged in the complaint, all actions that occurred prior to the date of incorporation are attributed to "Greenline."

2

exclusive, world-wide license to tecnhnology enabling it to increase the capacity of its systems to sixty million gallons per year.

In 2005, a company called Patriot BioFuels contacted Greenline regarding the purchase of a biodiesel processing unit. In September, 2005, Greenline and Patriot entered into a contract for the manufacture and installation of a processing plant on Patriot's property in Arkansas. Although Greenline designed such plants, it contracted with others for the actual manufacture and installation. Patriot proposed Defendant API, an Arkansas engineering firm. Patriot's Chief Operating Officer Michael Shook was, at the time, one of the two principles of API. API had no prior experience in biodiesel processing.

In December, 2005, Greenline entered into a contract with API for the installation of the processing units for Patriot. Shook signed the contract on behalf of API. The contract included a confidentiality and non-disclosure provision to protect Greenline's proprietary designs and technology.

In March, 2006, after completion of the Patriot facility, Greenline and API together founded Greenline Fabrications, LLC, for the purpose of installing Greenline's biodiesel plants. Under the terms of the agreement creating Greenline Fabrications, Greenline was solely and exclusively responsible for the design and development of the biodiesel processing units and API was responsible for managing the manufacture and installation of those units. Greenline Fabrication has installed approximately twenty-two processing facilities.

Effective January 1, 2007, Greenline transferred all of its ownership rights in Greenline Fabrication to API, making API the sole owner. API changed the name from Greenline Fabrications to APF. At the time of the transfer, Greenline also entered into a vendor agreement with APF that provided terms for the completion of the biodiesel plant projects that were already in progress and on which APF was acting as project manager. In addition, the vendor agreement provided terms for any future projects in which Greenline selected APF as the vendor to oversee the manufacture and assembly of biodiesel plants. The vendor agreement provided that Greenline was solely and exclusively responsible for the design of the biodiesel processing units and APF's only responsibility was for the installation of the units designed by Greenline. Under the vendor agreement, API was permitted to sell Greenline's biodiesel processing systems on a commission basis on the condition that it market the product as a "Greenline Industries" plant and include such an acknowledgment in the sales contract.

In a letter dated May 5, 2008, API/APF informed Greenline that they intended to terminate the vendor agreement and demanded over $20 million in exchange for undefined intellectual property created by API and utilized by Greenline.

On May 12, 2008, GII filed the complaint in this case, asserting claims for: (1) anticipatory breach of contract; (2) misappropriation of trade secrets; (3) false advertising pursuant to the Lanham Act; and (4) a declaration of its rights with respect to copyrights in the drawings and specifications for the biodiesel plants designed by Greenline and installed by

4

API/APF.

On February 27, 2008, API/APF had filed, in Arkansas state court, a complaint against GIL for breach of contract.  The Arkansas complaint alleged that GIL solicited and hired other firms to build biodiesel plants and failed to pay API/APF $698,654.38 due under the vendor agreement.  At the time it filed its complaint in this Court, GII was not aware of the Arkansas case because API/APF had not yet served it on GIL.  On May 15, 2008, after the complaint in this case had been filed, but before API/APF were served, API/APF filed an "amended and substituted complaint" in the Arkansas state court alleging five claims for: (1) a declaration of the termination of the vendor agreement; (2) a declaration regarding the existence and ownership of intellectual property rights; (3) an accounting of the sums owed by GIL to API/APF; (4) breach of contract; and (5) breach of the duty of good faith and fair dealing.

On June 10, 2008, API/APF filed the present motion to dismiss GII's complaint for lack of standing or failure to state a claim.  In the alternative, API/APF argue that GII's complaint should be dismissed, stayed or transferred based on the earlier filing of the Arkansas state court complaint.

On June 18, 2008, after being served in the Arkansas state court case, GIL removed that case to the Eastern District of Arkansas and, on July 1, 2008, it filed a motion to dismiss, stay or transfer the Arkansas suit, arguing that GII's case in this Court was the first to be filed.

5

DISCUSSION

I.  Standing

Because it appears that GII has standing to pursue the intellectual property claims and could amend the complaint to include allegations to establish standing to pursue the breach of contract claim, the Court denies without prejudice API/APF's motion to dismiss for lack of standing.  The motion may be renewed as discussed below.

II.  First to File

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-5 (9th Cir. 1982).  This doctrine, known as the first-to-file rule, "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."  Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993).  The rule "serves the purpose of promoting efficiency well and should not be disregarded lightly."  Church of Scientology of California v. United States Dep't of Army, 611 F.2d 738, 750 (9th Cir. 1979).

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues."  Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003).  If the first-to-file rule does apply to a suit, the

1  court in which the second suit was filed may transfer, stay or
2  dismiss the proceeding in order to allow the court in which the
3  first suit was filed to decide whether to try the case. <u>Alltrade,</u>
4  <u>Inc. v. Uniweld Products, Inc.</u>, 946 F.2d 622, 622 (9th Cir. 1991).
5       "Circumstances under which an exception to the first-to-file
6  rule typically will be made include bad faith, anticipatory suit
7  and forum shopping." <u>Id.</u> at 628 (internal citations omitted).
8  Another exception to the first-to-file rule applies if "the balance
9  of convenience weighs in favor of the later-filed action." <u>Ward v.</u>
10 <u>Follett Corp.</u>, 158 F.R.D. 645, 648 (N.D. Cal. 1994).  This is
11 analogous to the "convenience of parties and witnesses" on a
12 transfer of venue motion pursuant to 28 U.S.C. § 1404(a). <u>Med-Tec</u>
13 <u>Iowa, Inc. v. Nomos Corp.</u>, 76 F. Supp. 2d 962, 970 (N.D. Iowa
14 1999); <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F.
15 Supp. 128, 133 (S.D.N.Y. 1994).  The court with the first-filed
16 action should normally weigh the balance of convenience and decide
17 whether an exception to the first-to-file rule applies.
18 <u>Pacesetter</u>, 678 F.2d at 96 (citing <u>Kerotest Mfg. Co. v. C-O-Two</u>
19 <u>Fire Equipment Co.</u>, 342 U.S. 180, 185 (1952)); <u>see also</u> <u>Alltrade</u>
20 <u>Inc.</u>, 946 F.2d at 628.
21      API/APF argue that the first-to-file rule warrants a
22 dismissal, stay or transfer of this action because they filed the
23 original complaint in the Arkansas suit before GII filed this
24 action, and the parties and issues in both cases are substantially
25 the same.  GII agrees that the first-to-file rule applies to this
26 case, but argues its complaint in this case, rather than API/APF's
27 Arkansas complaint, was the first-filed complaint.

While API/APF's Arkansas state court complaint was filed before GII's complaint in this Court, API/APF's case was not removed to federal court until after the instant action was filed and after API/APF filed their amended complaint in the Arkansas state court.  Although neither party directly addresses whether the application of the first-to-file rule is affected by the fact that API/APF originally filed the Arkansas suit in state court and the Court is not aware of any Ninth Circuit case addressing the issue, it appears that the courts that have addressed this issue have found that the date of filing in the state court, not the date of removal, is considered for purposes of deciding which action was filed first.  See, e.g., Manufacturers Hanover Trust Co. v. Palmer Corp., 798 F. Supp. 161, 166 (S.D.N.Y. 1992) (finding "ample authority for the proposition that the state court filing date is the relevant benchmark"); see also Wright, Miller and Cooper, § 3738 (1998) ("After the removal of an action from state court, the federal district court acquires full and exclusive subject matter jurisdiction over the litigation.  The case will proceed as if it had been brought in the federal court originally.").  Applying this standard, API/APF's original complaint filed in the Arkansas state court was the first-filed case.

GII next argues that API/APF's original complaint "is irrelevant to the first filed analysis because . . . the complaint was never served and thus is null, void and immaterial." Opposition at 10.  GII bases this argument on API/APF's failure to serve the complaint within 120 days from filing as required by Arkansas Rule of Civil Procedure 4(i).  However, API/APF filed an

8

1  amended complaint, as they were entitled to do under Arkansas Rule
2  of Civil Procedure 15, and served it on GIL before the 120-day time
3  limit had elapsed.  Moreover, the Ninth Circuit has held that it is
4  "<u>the filing</u> of actions in coordinate jurisdictions that invokes
5  considerations of comity."  <u>Pacesetter</u>, 678 F.2d at 96 n.3
6  (emphasis added); <u>see also</u> <u>Ward v. Follett</u>, 1994 U.S. Dist. LEXIS
7  19751, *5 (N.D. Cal.) ("In determining when a party filed an action
8  for purposes of the first to file rule, courts focus on the date
9  upon which the party filed its original, rather than its amended
10 complaint.").

11      GII further contends that the Court should not consider
12 API/APF's original Arkansas state court complaint because it is not
13 related to the claims in the amended complaint.  GII contends that
14 "the amended complaint supersedes and replaces the previously filed
15 complaint."  Opposition at 11.  While it is true that an amended
16 complaint becomes the operative complaint once it is filed, this
17 does not override the Ninth Circuit's holding that the date of the
18 filing of an action, rather than the filing of an amended
19 complaint, is used for purposes of the first-to-file rule.  GII
20 also argues that the single breach of contract claim in API/APF's
21 original complaint does not appear in the amended complaint.
22 However, as API/APF respond, both the original complaint and the
23 amended complaint assert a breach of contract claim arising out of
24 the vendor agreement.

25      In the alternative, GII argues that, if the Court considers
26 API/APF's Arkansas state court case to be the first-filed, the
27 Court should not apply the first-to-file rule because the breach of

9

contract claim in the original, unserved complaint is not sufficiently similar to GII's claims in this case. However, this case, too, arises out of a claim of breach of the vendor agreement.

Citing <u>Northwest Airlines Inc. v. Filipas</u>, 2008 U.S. Dist. LEXIS 31084 (D. Minn.), GII also argues that its complaint is the first filed with respect to the claims now at issue. In <u>Northwest</u>, the airline filed an action seeking a declaration that its revised pension plan complied with the Employment Retirement Income Security Act (ERISA). <u>Id.</u> at *1. The defendant pilots had earlier filed an ERISA breach of fiduciary duty action in the Western District of Washington seeking production of documents and information regarding the revisions the airline was then considering. <u>Id.</u> at *2. The Washington court denied the pilots' motion for a preliminary injunction and the pilots moved to stay the action pending an appeal of the denial. <u>Id.</u> While the motion to stay was pending, the revised pension plan went into effect and the airline filed the declaratory judgment action in the District of Minnesota. <u>Id.</u> The pilots withdrew their motion to stay in the Washington case and filed an amended complaint including affirmative claims against the airline regarding the legality of the revised pension plan. <u>Id.</u>

Even though the Washington action for production of documents had been filed first, both the Washington and Minnesota courts found that the Washington case "was not the first-filed action regarding the legality of the [revised pension plan]." <u>Id.</u> at 6. The Washington court noted that "resolution of the original Seattle action would not adjudge or impact the claims raised in Minnesota."

10

Id. And, as the Minnesota court pointed out, "Allegations concerning the legality of the Target Plan were not raised by the pilots in the Seattle Litigation until January 10, 2008." Id.

The Northwest court's decision is not binding on this Court and is distinguishable from this case. Although the claims regarding intellectual property were first raised in GII's claims in this Court, resolution of the breach of contract claim in API/APF's original complaint in the Arkansas court would certainly impact the GII's contract claims in this Court.

The Court finds that API/APF's Arkansas suit has priority for purposes of the first-to-file rule. Therefore, the Court defers to the Eastern District of Arkansas to decide the appropriate forum and whether an exception to the first-to-file rule is applicable. See Pacesetter, 678 F.2d at 96 (noting that normally the respective convenience of the two courts should be addressed to the court in the first-filed action).

## CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice API/APF's motion to stay or to transfer this action and their motion to dismiss for lack of standing (Docket No. 7). If the Arkansas court grants GIL's pending motion to transfer, the parties shall file a notice of related cases and the Court will relate the cases, GII may file an amended complaint establishing standing to pursue the breach of contract claim and API/APF may, if necessary, file a motion to dismiss the amended complaint. If the Arkansas court denies GIL's motion to transfer, the parties shall notify the

11

Court. This case will be transferred to the Eastern District of Arkansas and API/APF may raise their standing arguments in that court.

On July 10, 2008, GII filed a motion for preliminary injunction, seeking to enjoin API/APF from pursuing the Arkansas litigation. That motion is based on GII's position that this case is first for purposes of the first-to-file rule. As discussed above, the Court finds that argument unavailing. Therefore, the Court DENIES GII's motion for preliminary injunction (Docket No. 16). The hearing previously scheduled for August 14, 2008 is hereby VACATED.

A case management conference will be held in this case as previously scheduled on August 21, 2008 at 2:00 PM, unless by that date the case has been transferred to Arkansas. If the Arkansas court has not ruled on the motion to transfer by August 11, 2008, the Court will continue the case management conference and all related obligations.

IT IS SO ORDERED.

Dated: 7/28/08

_____
CLAUDIA WILKEN
United States District Judge